08-2562-cv
Robert DeRosa v. National Envelope Corporation

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

_____

August Term, 2008

(Argued:  July 7, 2009                              Decided:  February 17, 2010)

Docket No. 08-2562-cv

_____

ROBERT DEROSA,

*Plaintiff-Appellant*,

– v. –

NATIONAL ENVELOPE CORPORATION,

*Defendant-Appellee*.

_____

Before: POOLER, B.D. PARKER, and RAGGI, *Circuit Judges*.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Korman, *J.*).  DeRosa appeals the district court's grant of summary judgment dismissing his claim of discrimination on account of disability, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12112, on the ground that claims made in connection with his application for Social Security Disability Insurance Benefits barred his claim.  Vacated and Remanded.

PETER A. ROMERO (NEIL M. FRANK, on the brief), Frank & Associates, Farmingdale, N.Y., *for Plainitff-Appellant*.

NEIL G. SPARBER (BRIAN W. TILKER, on the brief), Fulbright & Jaworski LLP, New York, N.Y., *for Defendant-Appellee*.

BARRINGTON D. PARKER, *Circuit Judge*:

Robert DeRosa appeals from a judgment of the United States District Court for the Eastern District of New York (Korman, *J.*) following an award of summary judgment to the National Envelope Corporation. DeRosa had sued National Envelope, his former employer, alleging discrimination on account of a medical disability, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12112 (the "ADA").

DeRosa argues that the district court incorrectly concluded that, as a consequence of statements he made in application forms for disability benefits, he was judicially estopped from arguing that he was capable of performing the essential functions of his job. We conclude that those statements did not give rise to judicial estoppel. Consequently, we vacate and remand to the district court for further proceedings.

**BACKGROUND**

The facts, unless otherwise noted, are not disputed. DeRosa became an employee of National Envelope in 1988, working as a customer service representative. His duties included quoting prices to customers and processing orders. Around 2002, DeRosa suffered a traumatic injury to his right leg. As a long-term result of this injury, DeRosa suffers from venous insufficiency, a condition that can result in swelling, ulcers, and infections. In response, DeRosa's physician instructed him to

"limit the dependency of his right leg; . . . avoid sitting or standing for prolonged periods of time; and . . . elevate his leg above his heart at regular intervals." DeRosa's physician also instructed him to, if possible, work from home. National Envelope agreed to this accommodation. It arranged for him to work from home by providing him with remote technology including a telephone, computer, and fax machine. During the two-year period from 2002 to 2004, however, DeRosa's medical condition did not abate, and his physician directed him to continue the prescribed treatment, including working from home, to slow the progression of his condition and to minimize discomfort.

In October 2004, a new chief executive officer of National Envelope decided to rescind the accommodation. He instructed DeRosa that he could no longer work at home, and that he would either have to return to work at the corporation's facilities, or be terminated. DeRosa, understanding that his medical condition would not permit this change, informed his supervisor that he could not return to on-site work. National Envelope then terminated DeRosa's employment. DeRosa alleges that his employer encouraged him to file for social security disability payments. DeRosa and National Envelope disagree on whether, prior to his discharge, he had satisfactorily performed the essential functions of his job. The district court did not resolve this dispute, but for purposes of this appeal, we assume DeRosa performed his work satisfactorily.

After his termination DeRosa applied for Social Security Disability Insurance ("SSDI") benefits. DeRosa's application, filed November 2004, included the sentences "I became unable to work because of my disabling condition on October 13, 2004" and "I am still disabled." In a subsequent portion of his application, DeRosa answered the question, "[h]ow do your illnesses injuries or conditions limit your ability to work?" He replied "[c]an't write, type, sit, stand, walk &

3

lift, reach, grab, bend." DeRosa also explained that his disability caused a change in his job duties in that he "could no longer commute, had to work from home." A different form, issued by the New York State Office of Temporary and Disability Assistance ("NYSOTDA"), and signed by DeRosa in December 2004, included the topic "Social Activities" and within that topic asked "Do you spend time with others? (*In person, on the phone, on the computer,* etc.) [] YES []NO If 'YES', describe the kinds of things you do with others." DeRosa checked "yes" in answer to the question, and elaborated by writing "family and social gathering. Spoke on the phone and worked with computer." Within the same topical group of questions, the form included the question "Describe any changes to your social activities since your illnesses, injuries, or conditions began." DeRosa answered that he was "no longer able to speak on phone or work with computer [due] to pain."

DeRosa sued National Envelope in July 2006, alleging that his termination violated the ADA. Following discovery, National Envelope moved for summary judgment. The district court concluded that DeRosa's statements about phone and computer usage on the SSDI and NYSOTDA forms estopped him from claiming that he was able to perform the essential functions of a customer service representative and that, as a result, he could not establish an essential element of his ADA claim. The court granted summary judgment, and this appeal followed. We review a district court's grant of summary judgment *de novo*, and we construe the evidence in the light most favorable to the non-moving party. *Rodal v. Anesthesia Group of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004).

**DISCUSSION**

A plaintiff alleging a violation of the ADA has the burden of making out a prima facie case, which includes the following elements: "1) he was an 'individual who has a disability' within the

meaning of the statute; 2) the employer had notice of his disability; 3) he could perform the essential functions of the job with reasonable accommodation; and 4) the employer refused to make such accommodation." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 (2d Cir. 2000). Since DeRosa had a disability which was known to his employer and had been accommodated in the past, the only disputed element on this appeal is the third – whether DeRosa can show that he could perform the essential functions of his job with reasonable accommodation.

The district court concluded that DeRosa was estopped from making that showing. The court focused on DeRosa's answer to the NYSOTDA form's question about social activities – that he did not speak on the phone or use the computer due to pain. The court reasoned that the circumstances the statement described would, if generally true, render him unable to perform the essential functions of his job. As the statement was made in a sworn application, the court concluded that DeRosa was estopped from arguing that he could, in fact, perform the essential functions of his job.

The interaction of statements made in applications for social security disability benefits and ADA claims is not a new issue for the courts. The Supreme Court addressed a variation of this issue in *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795 (1999). In *Cleveland*, the Court held that the mere fact that a plaintiff files for social security benefits (and thus, represents herself to be disabled) does not create a presumption that she is unable to perform the essential functions of her job, and thus, unable to prove an ADA claim. *Id.* at 802-03. The Court emphasized that the statutory schemes have different definitions of disability; the ADA includes the notion of reasonable accommodation, whereas the SSDI system does not. *Id.* at 803. The Court noted, however, that a sworn assertion in an SSDI application that someone is "unable to work" could negate an element of an ADA claim unless the plaintiff offers a sufficient explanation for the apparent contradiction.

5

*Id.* at 806. The Court cabined the effect of its holding by expressly noting that its holding did not address "directly conflicting statements about purely factual matters . . . ." Instead, the Court explained, it was leaving "the law related to the former, purely factual, kind of conflict where we found it." *Id.* at 802. *Cleveland* therefore did not displace traditional estoppel analysis where the issue with respect to a plaintiff's prior statements is a purported factual contradiction.

A potential consequence of a conflict between two factual statements made by the same party is  judicial estoppel: "Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (internal quotation marks and citations removed and alterations in original).  Typically, judicial estoppel will apply if: 1) a party's later position is "clearly inconsistent" with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel. *Id.* at 750-51. We further limit "judicial estoppel to situations where the risk of inconsistent results with its impact on judicial integrity is certain." *Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138, 148 (2d Cir. 2005) (quoting *Simon v. Safelite Glass Corp.*, 128 F.3d 68, 72 (2d Cir. 1997)).

Judicial estoppel applies to sworn statements made to administrative agencies such as the Social Security Administration as well as to courts. *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir. 1998).  In *Mitchell*, we affirmed the application of judicial estoppel where the plaintiff made factual averments in SSDI proceedings that were inconsistent with his ADA claim:

6

Plaintiff's statements, "that he was incapable of standing for any length of time or of walking and that he required work he could perform seated, clearly contradict [plaintiff's] position in this litigation that . . . he was able to stand and walk for a substantial portion of the work day." *Id.* at 7. We have cautioned, however, that before applying judicial estoppel to factual claims in ADA cases, "a court must carefully consider the contexts in which apparently contradictory statements are made to determine if there is, in fact, direct and irreconcilable contradiction." *Rodal*, 369 F.3d at 119. For example, in *Rodal*, the defendant sought to estop the plaintiff from arguing that he would have been able to perform the essential functions of his job in May 1999 when he requested an accommodation because of a statement he made in a parallel state court proceeding that he was unable to perform any of his duties as of July 1999. Noting our obligation to view the evidence in the light most favorable to the plaintiff, we explained that, because the two statements could be construed as reflecting a change between the two months, there was no "irreconcilable direct conflict." *Id.*

The district court held that DeRosa's statement on the NYSOTDA form that he limited his computer and telephone usage estopped him from arguing he could fulfill the essential functions of his position. However, as we said in *Rodal*, the context in which a statement is made is important. Here, DeRosa stated that the *work* effect of his disabilities was that he "could no longer commute" to work, but "had to work from home." Indeed, he did so for two years until his employer withdrew the home-work option. It was only in response to a question about his *social* activities that DeRosa made the statements relied on to support estoppel. Fairly construed, those statements related to his social interactions, not his capability to perform the essential functions of his job if permitted to work from home. With the context of the statements thus understood, the apparent contradiction between DeRosa's statements that he is limited in social circumstances, but still able to perform the

7

conditions of his employment with a no-longer-available accommodation, is reconcilable. DeRosa may well have experienced significant pain when he used the computer and phone while he worked for National Envelope from home, but he may have been able to endure that much pain, particularly as it was necessary to maintaining his job with the granted accommodation of home – work. His response to the social question may have indicated only that the work experience left him with no ability to tolerate further pain from social, optional activities. The response did not indicate an inability – or an unwillingness – to work from home despite some pain. We do not suggest that this is the only possible construction of DeRosa's statements. Moreover, a juror need not necessarily credit this construction, but that is not the issue for purposes of judicial estoppel. We deal here with the narrower question of whether the statements can be reconciled, not whether a fact-finder would necessarily adopt the interpretation which reconciles them. We conclude that, because DeRosa answered the question relating to his social activities, and because his answers can be logically reconciled with his assertion that he was able to fulfill the essential functions of his job with reasonable accommodation, judicial estoppel does not apply.

The district court concluded only that DeRosa's statements about the use of the telephone and computer for social activities on the NYSOTDA form estopped him proving his ADA claim. However, National Envelope also argues that other statements should give rise to estoppel. It points to DeRosa's statements on the SSA form that he was unable to commute to work, and was unable to grab, reach, and bend. National Envelope also points to DeRosa's statement he "became unable to work because of [his] disabling condition on October 13, 2004" and is "still disabled." As the Supreme Court made clear in *Cleveland*, a simple averment that one is disabled for the purposes of an SSDI application does not preclude the argument that one could, with reasonable

8

accommodation, be gainfully employed. *Cleveland*, 526 U.S. at 807. The statement "I am disabled" on an SSDI application should generally be taken as a statement that "I am disabled for the purposes of the Social Security Act." The Social Security Act does not concern itself with reasonable accommodation.

These various factual statements do not contradict DeRosa's position on the critical issue of whether he was able to fulfill the essential functions of his employment with reasonable accommodation. The record is clear that DeRosa was disabled, that he had physical limitations, and that he felt he needed to work from home. Consequently, it is hardly surprising that he said on the disability application forms that he was disabled or unable to grab, reach, or commute. The inapplicability of judicial estoppel becomes even more apparent in light of a record establishing that DeRosa had a disability that National Envelope knew about, that it extended an accommodation to DeRosa that presumably it considered "reasonable," and that he performed his major responsibilities satisfactorily with this accommodation for two years until a new supervisor reassessed the situation. Nothing DeRosa said in his SSDI forms contradicted any of this. And nothing he said caused any discernable prejudice to National Envelope or amounted to an affront to the integrity of the district court.

**CONCLUSION**

The judgment of the District Court is vacated. The case is remanded for proceedings consistent with this opinion.

9