L. Metcalfe WALLING,
Appellee–Cross–Appellant,

v.

Richard A. HOLMAN, Mary Holman,
Wall Street Reports and Intelligence
Bulletin, Inc., Defendants,

Richard A. Holman, Wall Street Reports
and Intelligence Bulletin, Inc.,
Appellants–Cross–Appellees.

L. Metcalfe WALLING, Appellant,

v.

Richard A. HOLMAN, Wall Street
Reports and Intelligence Bulletin,
Inc., Defendants,

Mary Holman, Appellee.

Nos. 1314, 1315, Dockets
88–7073, 88–7101.

United States Court of Appeals,
Second Circuit.

Argued June 15, 1988.

Decided Sept. 19, 1988.

80

Samuel N. Greenspoon, Grutman, Miller, Greenspoon & Hendler, New York City, for appellants-cross-appellees Wall Street Reports and Intelligence Bulletin, Inc.

Richard A. Holman, New York City, pro se.

Cletus P. Lyman, Lyman & Ash, Philadelphia, Pa., for appellee-cross-appellant Walling.

Myles C. Cunningham, New York City, for appellee Mary Holman.

Before OAKES, MESKILL and PIERCE, Circuit Judges.

OAKES, Circuit Judge:

Appellants Richard Holman and Wall Street Reports and Intelligence Bulletin, Inc. ("Wall Street Reports") appeal from a judgment entered by the United States District Court for the Southern District of New York, Charles M. Metzner, Judge, holding them liable for the loss of furniture and other furnishings from a rented home in Bedford, New York, and awarding L. Metcalfe Walling, the homeowner, damages in the amount of $45,837 plus interest.

Appellants' principal arguments are that the district court erred in allowing the deposition of a witness, Ida C. Bellotti, to be read at trial, and that the evidence was insufficient to support the jury's verdict. Appellants also argue that New York Real Property Law § 235–b(1) (McKinney 1988) prohibits recovery of certain damages related to the residential property, that the district court committed error in not dismissing Walling's action as time-barred under New York's three-year statute of limitations, that the court improperly pierced the corporate veil in holding appellant Richard Holman personally liable, and that the court improperly dismissed appellants' counterclaim as abandoned. On cross-appeal, Walling argues that the district court erred in refusing to charge the jury on defendants' contractual liability and on punitive damages and in dismissing appellee Mary Holman from the suit.

As to the cross-appeal, we find that the district court should have given a jury instruction on contractual liability, but that the jury's verdict was not affected by this failure. On Richard Holman's and Wall Street Reports' appeal, we affirm the judgment below except for certain damages awarded, which we reverse and remand to the district court for recomputation.

## FACTS

In July 1971, while L. Metcalfe Walling was living abroad, his son rented his father's furnished house in Bedford, New York, to Wall Street Reports as a weekend residence for the corporation's 100% stockholder, Richard Holman. When the lease expired on September 4, 1972, an informal rental arrangement continued between the parties. Letters negotiating rent increases and other terms of occupancy were directed to Richard Holman personally, and bills relating to the property were paid from both Holman's corporate accounts (including that of another wholly owned corporation, Wall Street Transcripts) and his personal funds. In 1978 Holman married Mary Holman, who sometimes accompanied him to the Walling residence.

In October 1979 Walling's niece, with his consent, removed some furniture from the house and reported to her uncle that the furniture and a piano remaining in the house were damaged. Walling testified that in 1979, when he last visited the property, he noticed that although the house still contained some of his furniture and part of his collection of objet d'art, other pieces were missing. In 1982 Richard and Mary Holman moved out of the house, leaving it empty except for the damaged piano. The roof had leaked, damaging the parquet floors, and a pool filter had to be replaced.

L. Metcalfe Walling commenced this suit on April 10, 1984, seeking recovery of damages based upon at least two [1] distinct theories: the defendants' contractual obligation to leave the house and furnishings in good repair, and the defendants' conversion of the personal property. Judge Metzner instructed the jury to award damages for injury to the house and to personal property in the possession of the plaintiff's niece if it found that the defendants had breached the lease by failing to surrender

---

1. Walling at times announced his intention to pursue a quasi-contractual claim for the missing items by ratifying a fictitious sale to Holman and suing for its proceeds. *See Baratta v. Kozlowski,* 94 A.D.2d 454, 464, 464 N.Y.S.2d 803, 809 (2d Dep't 1983). We need not discuss this further for the basis of recovery we sanction here leads to the same result, except as to cross-appellee Mary Holman. As to her, however, there has been no request for relief in the event of affirmance.

items in the same condition as they were received, less reasonable wear and tear. He instructed the jury to award damages for missing personal property if it found that conversion had occurred, but he refused to charge the jury on punitive damages or on contractual recovery for the missing items. The jury found for the plaintiff, awarding a total of $45,837 as follows:

*Breach of Contract*

(a) Damage to the parquet floors      $ 1,950
(b) Damage to the beams and
       side walls                                        0
(c) Damage to the pool filter              401
(d) Damage to the glass door              126
(e) Refuse removal                            110
(f) Damage to the piano                     250
(g) Damage to furnishings in
       possession of Walling's
       niece                                       1,500

*Conversion*

(a) Damages for missing fur-
       nishings and other personal
       property                                 41,500

## DISCUSSION

■ Appellants have expended considerable energy attempting to persuade this court that a "fraud on the Court" caused the district court's admission of the deposition of a witness, Ida C. Bellotti, on the ground that she was unable to attend because of infirmity. Plainly there was no such fraud, for the district court was aware that her infirmity was disputed. Appellants' trial counsel, contesting admission of the deposition, claimed to be "reliably informed that she [Bellotti] was playing golf" the previous week. Bellotti, however, testified at her deposition, under oath and in the presence of appellants' counsel, as to the nature of her difficulties, and the district court based its ruling on this testimony. Finally, any "fraud" would have been exposed (and any possible prejudice avoided) when the appellants produced Bellotti in person as their witness. The trial judge was then in a position to observe Bellotti's physical condition and to determine whether sanctions, including striking the deposition from the record, were appropriate. We consider his decision to forego such sanctions dispositive.

■ Appellants are precluded from challenging the sufficiency of the evidence because they failed to move for a directed verdict at trial in accordance with Fed.R. Civ.P. 50(b). *See Oliveras v. American Export Isbrandtsen Lines, Inc.*, 431 F.2d 814, 816–17 (2d Cir.1970). We also dispose summarily of appellants' argument that the district court erred in dismissing with prejudice appellants' counterclaim for money expended on repairs. The counterclaim did not appear in the pretrial order, nor was any request made for a jury charge on the claim. Thus, dismissal on the ground of abandonment was proper. *See Schenck v. Bear, Stearns & Co.*, 583 F.2d 58, 60 (2d Cir.1978).

Next, appellant Richard Holman, noting that the original lease was signed by the corporate defendant, Wall Street Reports, challenges the district court's ruling that he could be held personally liable under the lease for damage to the property. We affirm the district court for two reasons. First, as Judge Fuld wrote in *Walkovszky v. Carlton*, 18 N.Y.2d 414, 418, 223 N.E.2d 6, 8, 276 N.Y.S.2d 585, 588 (1966), where "the corporation is a 'dummy' for its individual stockholders who are in reality carrying on the business in their personal capacities for purely personal rather than corporate ends," the stockholders may be held personally liable for corporate debts. *See Brunswick Corp. v. Waxman*, 459 F.Supp. 1222, 1230 (E.D.N.Y.1978), *aff'd*, 599 F.2d 34 (2d Cir.1979). Here, the use of the corporation to rent a residence for the sole stockholder's use cannot limit Holman's personal liability. Second, the evidence presented at trial showed that Holman personally negotiated extensions of the lease with Walling and supports Judge Metzner's implicit finding that Holman and Wall Street Reports were jointly liable beyond the term of the original lease.

■ We do not, however, affirm the entire award. Certain damages, namely those relating to the condition of the realty when defendants vacated the premises, as a matter of law are not recoverable by the landlord. New York Real Property Law § 235–b(1) creates a warranty of habitabili-

ty in "every written or oral lease or rental agreement for residential premises." This appears to cover—at a minimum—the water damage to the floors caused by a leaky roof. The New York Court of Appeals has interpreted § 235-b as a legislative remedy "to compel ... landlord[s] to make necessary repairs or provide essential services." *Park West Management Corp. v. Mitchell,* 47 N.Y.2d 316, 325, 391 N.E.2d 1288, 1292, 418 N.Y.S.2d 310, 314, *cert. denied,* 444 U.S. 992, 100 S.Ct. 523, 62 L.Ed.2d 421 (1979). *See also, e.g., Kachian v. Aronson,* 123 Misc.2d 743, 746–47, 475 N.Y.S.2d 214, 218, (N.Y.C.Civ.Ct.1984) (warranty covers water leakage). We reject appellee Walling's contention that the warranty is limited to conditions that endanger life, health, and safety, because the warranty extends to maintenance of the premises "in accord with the uses reasonably intended by the parties." *Park West Management Corp.,* 47 N.Y.2d at 325, 319 N.E.2d at 1293, 418 N.Y.S.2d at 315. The district court mistakenly believed that the lease could vary such terms. The statute, however, expressly voids all contractual attempts to make a residential tenant surrender rights under the warranty. N.Y. Real Prop. Law § 235-b(2). Only damage caused by the tenant's "misconduct" is exempt by the statute. *Id.* § 235-b(1). Since the district court did not apply the statute, no determination was made as to the scope of the warranty in this case and its effect on the damages. Accordingly, we remand this issue to the district court for a reassessment of the damages relating to injury to the residential property.

▆ We next address appellants' statute of limitations argument. Under the alternative theory of conversion advanced by Walling at trial and charged by the court, some furnishings were missing or damaged beyond repair in 1979 when he and his niece last viewed the premises, and others were sold at a tag sale held sometime between 1979 and 1982. The district court erroneously concluded that the statute of limitations began to run in 1982. In conversion actions, however, the statute of limitations ordinarily begins to run when the conversion takes place, rather than when the injured party discovers the injury and makes a demand for the property. *See Al–Roc Prods. Corp. v. Union Dime Sav. Bank,* 74 A.D.2d 834, 834, 425 N.Y.S.2d 525, 526 (2d Dep't 1980) (mem.); *Guild v. Hopkins,* 271 A.D. 234, 244, 63 N.Y.S.2d 522, 531 (1st Dep't 1946), *aff'd,* 297 N.Y. 477, 74 N.E.2d 183 (1947); *Pollack v. Warner Bros. Pictures, Inc.,* 266 A.D. 118, 120, 41 N.Y.S.2d 225, 226 (1st Dep't 1943) (per curiam); *cf. Lehman v. Lehman,* 591 F.Supp. 1523, 1527 n. 20 (S.D.N.Y.1984) (only where defendant committed "no overt act of conversion by an unlawful sale or disposition of the property" does statute of limitations begin to run when demand for property is refused). The tag sale and the defendants' removal of property might have started the limitations period running as to some items as early as 1979. The three-year statute of limitations applicable to property actions, N.Y.Civ.Prac.L. & R. 214(4) (McKinney Supp.1988), would therefore bar tort claims for goods converted before April 9, 1981.

Nonetheless, because the appellants' liability "had its genesis in [a] contractual relationship," *Sears, Roebuck & Co. v. Enco Assocs., Inc.,* 43 N.Y.2d 389, 396, 372 N.E.2d 555, 558, 401 N.Y.S.2d 767, 771 (1977), in the form of a lease, Walling was entitled to elect a contractual remedy for the loss of the missing items and be governed by the six-year contractual statute of limitations. *See id.; see also Video Corp. of America v. Frederick Flatto Assocs.,* 58 N.Y.2d 1026, 448 N.E.2d 1350, 462 N.Y. S.2d 439 (1983); *Baratta v. Kozlowski,* 94 A.D.2d 454, 460–64, 464 N.Y.S.2d 803, 807–10 (2d Dep't 1983).

▆ The election of remedies should have been made at trial at a time within the discretion of the trial judge. *Baratta,* 94 A.D.2d at 464, 464 N.Y.S.2d at 809. As the statute of limitations for contractual actions is six years, N.Y.Civ.Prac.L. & R. 213(2) (McKinney Supp.1988), Walling not surprisingly requested the court to charge the jury on a contract claim. As we have said, the district court disregarded Walling's request and charged the jury only on the conversion claim, failing, however, to

disallow the time-barred conversion claims. Had the court properly permitted the contractual claim to go to the jury, however, we conclude that the result would be unchanged. Because the court refused to charge the jury on punitive damages, the tort damages awarded to Walling, which were equivalent to the value of the property, were identical to contractual damages for appellants' failure to turn over the items at the end of the lease.

■ Finally, we conclude that appellee Mary Holman was properly dismissed as a defendant in this case, as she was served more than three years after any alleged conversion of the property, and at no time entered into any contractual relationship with Walling which would permit recovery under the more generous statute of limitations. *Cf. Sears, Roebuck,* 43 N.Y.2d at 396–97, 372 N.E.2d at 558–59, 401 N.Y.S.2d at 771.

Judgment affirmed in part, reversed in part, and remanded to the district court for a recalculation of damages.